UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS L. SCHOENHUT,<br><br>　　　　Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>　　　　Respondent. | Case No.:1:15-CV-00341-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before this Court is Petitioner Douglas L. Schoenhut's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his claim for disability insurance benefits. *See generally* Pet. for Review (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On January 7, 2013, Douglas L. Schoenhut ("Petitioner") filed an application for disability insurance benefits, alleged disability beginning June 21, 2012. Petitioner's claim was initially denied on February 6, 2013 and, again, on reconsideration on April 24, 2013. On April 26, 2013, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On February 24, 2014, ALJ Louis M. Catanese, Jr. held a video hearing in Billings, Montana, at which time Petitioner, represented by attorney Michael R. Whipple, appeared and testified. Impartial vocational expert, Beth Cunningham, also appeared and testified during the same February 24, 2014 hearing.

**MEMORANDUM DECISION AND ORDER - 1**

On April 9, 2014, the ALJ issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council on May 23, 2014 and, on July 21, 2015, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed the instant action, arguing that (1) "[t]he decision of the [ALJ] and Appeals Council are not supported by substantial evidence, and they did not consider crucial evidence submitted in a timely fashion with regard to claimant's impairments"; and (2) [t]he conclusions of law made by the [ALJ] and the Appeals Council that [Petitioner] was not under a disability are incorrect and contrary to the law and regulations of the Social Security Act." Pet. for Review, p. 3 (Docket No. 1). In particular, Petitioner contends that (1) the ALJ erred by failing to properly evaluate the medical opinion evidence from Petitioner's treating sources; (2) the ALJ failed to properly evaluate Petitioner's Veterans Administration disability rating; and (3) the ALJ erred in finding Petitioner not credible. *See* Pet.'s Brief, p. 2 (Docket No. 10). Petitioner therefore requests that the Court either reverse the ALJ's decision and find that he is entitled to disability benefits, or, alternatively, remand the case for further proceedings and award attorneys' fees. *See* Pet. for Review, pp. 3-4 (Docket No. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

**MEMORANDUM DECISION AND ORDER - 2**

Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's

**MEMORANDUM DECISION AND ORDER - 3**

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

#### A.      Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  *See* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  *See* 20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  *See* 20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since June 21, 2012, the alleged onset date.  *See* (AR 20).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

**MEMORANDUM DECISION AND ORDER - 4**

requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, migraine headaches, obesity, bilateral hand osteoarthritis, and a cognitive disorder." (AR 20-21).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 21-23).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past

**MEMORANDUM DECISION AND ORDER - 5**

relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC "to perform a range of light work as defined in 20 C.F.R. § 404.1567(b)." (AR 23). Specifically:

> [Petitioner] could occasionally climb ladders, ropes, or scaffolds, and could perform all other postural activities on a frequent basis. He is limited to frequent bilateral handling/fingering. He must avoid concentrated exposure to noise. Finally, the claimant is limited to simple, routine, repetitive tasks.

(AR 23-28).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Petitioner is unable to perform any past relevant work. *See* (AR 28). However, the ALJ further found that there are jobs that exist in significant numbers in the national economy that Petitioner can perform, including ticket taker, office helper, and warehouse support worker. *See* (AR 29). Therefore, based on Petitioner's age, education, work experience, and RFC, the ALJ concluded

**MEMORANDUM DECISION AND ORDER - 6**

that Petitioner "has not been under a disability, as defined in the Social Security Act, from June 21, 2012, through the date of this decision." (AR 29).

**B.     Analysis**

     1.     <u>Petitioner's Treating Physicians' Opinions</u>

The medical opinion of a treating physician is entitled to special consideration and weight. *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). Such deference is warranted because the treating physician "is employed to cure and has a greater opportunity to know and observe the individual." *Id*. However, a treating physician's opinion is not necessarily conclusive. *See id*. at 762. If the treating physician's opinions are not contradicted by another doctor, they may be rejected only for clear and convincing reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons, supported by substantial evidence in the record, for doing so. *See id*. A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is one such sufficient reason for rejecting that opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Petitioner argues that the ALJ failed to give proper weight to his treating physicians' opinions, including those from Neil Argyle, M.D. and Eric Danielson, BSW (MSW Clinical Intern). *See* Pet.'s Brief, pp. 8-13 (Docket No. 16). The Court addresses these arguments below.

          a.     Dr. Argyle

Dr. Argyle, Petitioner's treating physician at the VA Hospital since August 2013, submitted a "Physical Medical Source Statement" on February 19, 2014. *See* (AR 1236-39).

Therein, Dr. Argyle opined that, owing to neck and back pain, Petitioner (1) can sit for about two hours at a time for a total of six hours in an 8-hour workday; (2) can stand for about 30 minutes at a time for less than two hours of an 8-hour workday; (3) would need to change positions at will and take unscheduled breaks; (4) would require the use of an assistive device due to issues with pain and balance; (5) could only use his hands and arms for 25% of an 8-hour workday; (6) would be off-task for about 10% of the workday; (7) would have good days and bad days; and (8) would miss about four days of work each month due to his impairments. *See id*. Petitioner argues that, "had these opinions been accepted, they would have directed a finding of disabled." Pet.'s Brief, p. 9 (Docket No. 10).

The ALJ accorded "little weight" to Dr. Argyle's opinions, stating that they are "not corroborated by the medical findings." (AR 26). The ALJ further noted that Dr. Argyle only saw Petitioner on two occasions and, regardless, considered Petitioner's prognosis to be good. *See id*. Petitioner takes issue with the ALJ's rejection of Dr. Argyle's opinions, arguing that it is not supported by the requisite substantial evidence in the record. *See* Pet.'s Brief, pp. 9-11 (Docket No. 10). The undersigned agrees.

First, the ALJ's suggestion that Dr. Argyle's opinions are not supported by the balance of medical findings is lacking. That is, while the ALJ recites numerous portions of the medical record in his Decision (*see* (AR 24-25)), there is no connection of the dots between any specific treatment note and Dr. Argyle's allegedly conflicting opinions. Indeed, some of the ALJ's citations to the record seem to endorse (rather than refute) Dr. Argyle's opinions (at least in certain respects), leaving the Court to wonder exactly what portions of the medical record the ALJ intended to rely upon when questioning and lending only "little weight" to Dr. Argyle's opinions. *See, e.g.*, (AR 24-25) (ALJ noting: "In April 2013, the claimant underwent a

**MEMORANDUM DECISION AND ORDER - 8**

disability benefits assessment through the VA for his thoracolumbar spine condition. Physical exam showed reduced range of motion in the lumbar spine with tenderness to palpation in the left paraspinal muscles and hypoactive deep tendon reflexes in the knees and ankles, but he had normal motor strength in the lower extremities, no atrophy, intact sensation, negative straight leg raises bilaterally, and he did not use an assistive device. . . . In May 2013, the claimant reported that he was using a walking stick to lean on when he felt unstable on his right leg. Physical exam showed decreased range of motion in the arms, shoulders, and legs with slow, antalgic gait and posture leaning forward. . . . A June physical exam showed marked limitation on lateral range of motion in the cervical spine but upper extremity strength was normal. . . . In February 2014, the claimant was noted to be using a crutch instead of a cane for walking."). In short, without more, this irregular evidentiary "state of flux" cannot represent the sort of specific and legitimate reasons, supported by substantial evidence in the record, needed for rejecting Dr. Argyle's opinions. *See Cochrane v. Barnhart*, 2003 WL 22331970, *1 (9th Cir. 2003) ("A court reviewing the denial of Social Security benefits may examine only the reasons and explanations offered by the ALJ (and the Commissioner); if those reasons are found wanting, a reviewing court may not search the record for reasons that support the Commissioner's determination, if those reasons were not given by the decision-maker in the administrative proceedings.").

Second, notwithstanding these shortcomings, in selecting the evidence he did from the record for evidence to support his determination that Petitioner is not disabled, the ALJ failed to reconcile potential inconsistencies and ambiguities in the medical record. For example, Petitioner highlights the following:

- An MRI showing that C5-C6-C7 have posterior disc osteophytes complexes. They are most prominent in the left paracentral regions and displace the

**MEMORANDUM DECISION AND ORDER - 9**

       spinal cord posteriorly on the left side. There is also moderate foraminal stenosis at the C6-C7 level. *See* (AR 386).

- X-rays showing mild disc space narrowing at L4-L5. Marked limitations in range of motion in the lumbar spine and cervical spine. *See* (AR 461, 634-38, 1005).

- History of headaches once or twice a month with nausea resulting in missed work; these headaches can last a few hours or a few days. *See* (AR 387, 604, 1003).

- X-rays showing degenerative changes in the feet; there are changes in the IP joints and calcaneal spurs. *See* (AR 324).

- There is mild left knee crepitance. *See* (AR 1005).

- White matter changes in the brain in the frontal lobes; these could relate to difficulty paying attention, slow speed, and decreased pain threshold. *See* (AR 1194-95, 1204-08, 1232).

- Petitioner's hands and feet show changes consistent with osteoarthritis. *See* (AR 930-31, 935, 1007, 1008).

*See* Pet.'s Brief, p. 10 (Docket No. 10). It is true, as Respondent points out, that these references may exist entirely separate from Dr. Argyle's opinions and, therefore, may be irrelevant on the issue of whether the ALJ properly discounted Dr. Argyle's opinions. *See* Resp.'s Brief, p. 6 (Docket No. 14). However, they nonetheless highlight the outcome-determinative nature of the ALJ's Decision, in that the stated consideration (and discounting of) of Dr. Argyle's opinions is not tethered to any specific justification in the medical record. Simply put, more is needed.

      Third, even though he had seen Petitioner not more than two times, there is nothing in the record that suggests that Dr. Argyle was not fully informed on Petitioner's conditions by virtue of his review of the medical records (in addition to his undisputed personal care and treatment of Petitioner). *See* Pet.'s Brief, pp. 10-11 (Docket No. 10) (discussing coordination between VA departments and need for new provider in August 2013, stating: "While [Dr. Argyle] may have

**MEMORANDUM DECISION AND ORDER - 10**

only had two appointments, his involvement in [Petitioner's] care since August 2013 and the fact that he had access to all prior medical records clearly put him in a position to offer a well-informed opinion as to the impact of [Petitioner's] limitation."). Such familiarity with Petitioner puts him at least on the same level as the State agency medical consultants who, like Dr. Argyle, consulted the medical record before rendering any medical opinions.

Finally, while Dr. Argyle's reference to Petitioner's prognosis as being "good" is peculiar in light of (1) Dr. Argyle's ultimate opinions and (2) Petitioner's VA disability rating (80% at the time Dr. Argyle completed the "Physical Medical Source Statement"), that prognosis is, at best, ambiguous for those same reasons. Moreover, the prognosis of "good" must be considered alongside Dr. Argyle's contemporaneous conclusion that Petitioner's impairments have "lasted or can . . . be expected to last at least 12 months." (AR 1236). In other words, because it is not clear what exactly is meant by a "good prognosis" in the context of Petitioner's application for Social Security benefits, the fact of that statement does little to contradict Dr. Argyle's opinions.

With all this in mind, it may very well be the case that Petitioner is, in fact, not disabled and that Dr. Argyle's opinions are legitimately at odds medical record. However, the ALJ's stated justification for giving "little weight" to those opinions (as a basis for his disability determination) does not represent the necessary specific and legitimate reasons for doing so. Remand is appropriate in this respect.

     b.  Eric Danielson, BSW (MSW Clinical Intern)

Mr. Danielson is Petitioner's counselor/therapist. *See* (AR 1240) ("I have known [Petitioner] since his senior therapist Dr. Deborah Every, Psy.D. invited me to conduct his intake in his first session. Shortly thereafter, [Petitioner] was then referred to me on December 12,

**MEMORANDUM DECISION AND ORDER - 11**

2013 for individual therapy. I have worked with [Petitioner] as his therapist on a weekly basis, with few exceptions made by the veteran over the course of the holiday season."). In this setting, Petitioner states that Mr. Danielson documented Petitioner's mental/social impairments, including:

- In the intake interview, Petitioner used nervous gestures and appeared disorganized. *See* (AR 1243).

- Petitioner displayed word aphasia, likely due to traumatic brain injury while in the military; this damage was shown by the white spots on his brain MRI. *See* (AR 1248).

- Moderate to extreme difficulties associated with crowds, occasional nightmares, and observed tremors. *See* (AR 1248).

- Clear indications of aphasia while attempting to recall stressful situations. *See* (AR 1249).

- Signs at therapy sessions of increasing difficulty with executive functioning and memory recall. *See* (AR 1251).

*See* Pet.'s Brief, p. 12 (Docket No. 10) (citing (AR 1242-59) (intake exam and counseling session). However, the ALJ never considered these findings/opinions. According to Petitioner, "[it] is clear that, had Mr. Danielson's opinions been considered and accepted, a more restrictive RFC [(to include limitations for social situations, memory limitations, aphasia limitations, and limitations for properly managing tasks)] would have been articulated." *Id*. at p. 13.

At the outset, Mr. Danielson is not an "acceptable medical source" as defined by the Social Security regulations. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a); *compare with* 20 C.F.R. §§ 404.1513(d), 416.913(d) (discussing "other sources"). ALJs may not discount "other" medical sources without explanation, but they may afford them less weight if the ALJ provides "germane" reasons. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Molina v.*

**MEMORANDUM DECISION AND ORDER - 12**

*Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The Ninth Circuit has found it sufficient if an "ALJ at least noted arguably germane reasons for dismissing [other source] testimony, even if he did not clearly link his determination to those reasons." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Germane reasons include the fact that an opinion is inconsistent with objective medical evidence in the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, the ALJ did not address Mr. Danielson's opinions in any specific sense. *See* (AR 18-29). Thus, the ALJ did not offer any particular reasons (germane or otherwise) for discounting Mr. Danielson's opinions. To the extent germane reasons exist in the medical evidence referenced throughout the Decision, they are insufficiently vague for the same reasons discussed above. *See supra*. Remand is appropriate in this respect.

    2.    <u>Petitioner's VA Disability Rating</u>

"Although a determination by the VA about whether a claimant is disabled is not binding on the Social Security Administration . . ., an ALJ must consider that determination in reaching [his] decision." *Marion v. Berryhill*, 2017 WL 819916, *3 (W.D. Wash. 2017) (citing *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); 20 C.F.R. § 404.1504). Further, the ALJ "must ordinarily give great weight to a VA determination of disability" because of "the marked similarity" between the two federal disability programs. *See McCartey*, 298 F.3d at 1076. However, "[b]ecause the VA and SSA criteria for determining disability are not identical," the ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id*. (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)).

Relevant here, Petitioner is a veteran. In 2012, the VA determined that Petitioner had a 50% disability rating; in 2013. *See* (AR 334). By 2013, Petitioner was given an 80% disability

**MEMORANDUM DECISION AND ORDER - 13**

rating under the VA guidelines.  *See* (AR 960).  At the time of the February 24, 2014 hearing, the ALJ was made aware of this rating.  *See* (AR 265-69, 271-73).[1]  However, the ALJ never really discussed Petitioner's VA disability rating, instead referring only to the fact that Petitioner receives VA disability benefits.  *See, e.g.*, (AR 24) ("The claimant testified that he currently collects $1,700 per month in disability from the Veterans' Administration (VA). . . .  In April 2013, the claimant underwent a disability benefits assessment through the VA for his thoracolumbar spine condition.").  Respondent concedes this point, but argues that Petitioner "has not met his burden of showing prejudice resulting from the ALJ's error in not considering the VA disability rating."  Resp.'s Brief, p. 10 (Docket No. 14).  The undersigned disagrees.

Respondent argues that, in finding Petitioner's degenerative disc disease of the cervical and lumbar spine and migraine headaches to be severe impairments, the ALJ therefore considered the bases of Petitioner's VA disability rating and, accordingly, any failure to specifically address the rating itself is harmless.  *See id*. at pp. 10-11.  Such an argument, however, improperly conflates the two inquiries.  Under Respondent's argument, there would be no requirement to consider a claimant's VA disability rating so long as an ALJ's analysis at step two of the sequential process speaks (even remotely) to those impairments contributing to the VA disability rating.  Respondent provides no case law supporting such an extreme conclusion.

---

[1] Petitioner also claims that the ALJ was made aware that "records were submitted showing that testing was being done to determine if this rating needed to be changed."  Pet.'s Brief, p. 14 (Docket No. 10) (citing (AR 265, 271)).  However, the Court's examination of the cited record does not indicate that the ALJ was aware that Petitioner's up-to-that-point 80% disability rating was being reconsidered.  *See* Resp.'s Brief, p. 9, n.1 (Docket No. 14).  Regardless, in October 2014, the VA found that Petitioner was considered 100% disabled, largely due to his mental impairments.  *See* (AR 282-91).  While this latest determination followed the hearing, this information was submitted to the Appeals Council and is part of the record.  *See id*.

**MEMORANDUM DECISION AND ORDER - 14**

Even so, questions remain as to whether (or to what extent) the ALJ considered Petitioner's anxiety to be a severe impairment; if not, this reality would seem to run counter to the argument that Respondent asks this Court to adopt. *See* Pet.'s Reply Brief, p. 6 (Docket No. 15).

Additionally, the Court is not persuaded by Respondent's argument that the ALJ's failure to consider Petitioner's VA disability rating was harmless because he "considered the medical evidence [and] conclud[ed] that the objective findings failed to provide strong support for [Petitioner's] allegations of disabling symptoms and limitations . . . ." Resp.'s Brief, p. 11 (Docket No. 14). Presumably, the "objective findings" referred to by Respondent includes the opinions of the state agency medical consultants. Those opinions, however, do not contain persuasive, specific, or valid reasons for not considering Petitioner's VA disability rating. *See Taylor v. Colvin*, 196 F. Supp. 3d 1120, 1127 (N.D. Cal. 2016) ("Neither the difference between the VA and SSA disability standards nor testimony by nonexamining physicians constitute a persuasive, specific, valid reason for discounting [the petitioner's] VA determination.").

The ALJ did not provide a persuasive, specific, valid reason for discounting Petitioner's VA disability rating, supported by the record. Thus, the ALJ erred in essentially giving no weight to Petitioner's VA disability rating. *See McCartey*, 298 F.3d at 1076 ("In this case, the VA determined that McCartey was 80% disabled due to his depression and lower back injury. The ALJ failed to consider the VA finding and did not mention it in his opinion. We hold that the ALJ erred in disregarding McCartey's VA disability rating . . . ."). Remand is appropriate in this respect.

      3.    <u>Petitioner's Credibility</u>

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914

**MEMORANDUM DECISION AND ORDER - 15**

F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities).  In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms.  *See* SSR 96-7p, *available at* 1996 WL 374186 (discussed *supra*).  In short, "[c]redibility decisions are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  However, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so.  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722).

As described above, the ALJ erred in his (1) assessment of Dr. Argyle's opinions, and (2) failure to consider Petitioner's VA disability rating (*see supra*).  Hence, the Court will not address issues surrounding Petitioner's credibility in great depth, although, at first blush, the ALJ was likely on firmer ground.  For example, the Court notes, as did the ALJ, that Petitioner's daily activities – considered in isolation – suggest that Petitioner's statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms may be less than fully credible.  *See, e.g.*, (AR 22, 24, 27).  But, since the ALJ's credibility determination was made

**MEMORANDUM DECISION AND ORDER - 16**

hand-in-hand with the ALJ according little weight to Dr. Argyle's opinions, and with the ALJ not considering Petitioner's VA disability rating, the evidentiary landscape for questioning Petitioner's credibility has substantially changed. In light of this change in circumstances, remand is also appropriate in this respect.

## IV. **CONCLUSION**

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

However, (1) the reasons given by the ALJ for rejecting Dr. Argyle's opinions are not properly supported, and (2) the ALJ erred in not considering Petitioner's VA disability rating. This case is remanded for reconsideration for these reasons. After the ALJ reconsiders Dr. Argyle's opinions and Petitioner's VA disability rating, the ALJ should reconsider the issue of Petitioner's credibility, if necessary, for the purposes of any disability determination.

///

///

///

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 17**

## V. **ORDER**

Based on the foregoing, Petitioner's request for review is GRANTED and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED: **March 31, 2017**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge